[Civ. No. 61253. Second Dist., Div. Four. Sept. 22, 1982.]

TEXACO, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Baker, Ancel, Morris, Spencer & Frye and Mark G. Ancel for Plaintiff and Appellant.

John H. Larson, County Counsel, and Philip H. Hickok, Deputy County Counsel, for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—Plaintiff appeals from an adverse judgment in an action for refund of taxes. We affirm.

The instant case involves the validity of the tax assessed upon an oil refinery owned and operated by plaintiff, Texaco, Inc. The trial court sustained an order of the county assessment appeals board which had approved the assessment method used by the county assessor, which resulted in an assessed value of $155,147,000 whereas plaintiff contended, and here contends, the value should have been substantially less.

It is, of course, basic law that property should be assessed at its "market value." However, when dealing with a large and complicated piece of industrial property such as is here involved, it is admitted that there cannot be a "market value" in the usual sense, since oil refineries are not the subject of open market sales. The dispute here involves the assessment of the operating plant—it being agreed that the underlying land may be assessed by normal methods. As we read the briefs, the parties agree that the underlying method for evaluating the market value of the plant is to start with its original cost, appreciate that cost by a factor of inflation to arrive at the hypothetical costs of replacement on the lien date, and then depreciate the amount so arrived at by a factor taking into account both the depreciation attributable to normal wear and tear and a factor taking into account the fact that a plant such as here involved has suffered depreciation in value because of obsolescence caused by technological advances in the industry. In other words, no one would build, or buy, at present construction costs, the present plant even if it was now to be rebuilt in its present form.

I

The case before us is distinguishable from *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163 [116 Cal.Rptr. 160];

*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14 [127 Cal.Rptr. 154, 544 P.2d 1354]; and other cases following those cases. In those cases, the assessor had applied a common depreciation ratio to all buildings of the same class regardless of the age of obsolescence among them. Here, however, as we read the record, the assessor evaluated each divisible unit of the plant separately, the use of the same estimated life thereby resulting in a different ultimate value for each unit. In other words, once an expected useful life had been determined, (in this case twelve and one-half years), the depreciation for a given unit will vary directly with the actual age—a unit one year old being depreciated only approximately one-twelfth and a unit six years old being depreciated approximately 50 percent.

## II

■ The case at bench, thus, resolves itself into two issues: (1) that the assessor did not use a separate factor for computing depreciation due to normal wear and tear from that used to compute depreciation due to obsolescence. However, the assessor testified, and the board found, that his formula had taken into account both elements of depreciation. Neither the trial court, nor this court, may disregard that factual finding.

(2) The assessment of property, especially in cases such as this where no regular arms-length sales are available for use in determining market value, is not an exact art. The determination of how long a plant, or its units, has a useful life is, of necessity, a matter of judgment. The board had before it a mass of expert testimony (set forth at length in plaintiff's brief) directed to that issue. It found that the method used by the assessor here was a reasonable method for determining the difficult evaluation involved. The law requires only that an assessor adopt and use a reasonable method—neither a trial court, nor this court, can reject a method found by the board to be reasonable merely because, in our nonexpert opinion, another method might have been better.[1]

## III

Plaintiff raises two procedural matters, neither of which we regard as requiring a reversal.

---

[1]The trial court used the substantial evidence test. That is the test required by *Hunt-Wesson, Inc.* v. *County of Alameda*—a case on which plaintiff here relies in another context.

■ (1) It is argued that the trial court did not make detailed findings of fact. The issues before the trial court were issues of law; in such a case, no detailed findings of fact are required.

■ (2) Plaintiff sought to introduce before the board exhibits relating to the assessment of other refineries. The board refused admission. We see no error. The evidence before the board showed that the Texaco refinery had been developed to deal with, and to produce, different kinds and grades of crude oil and ultimate product than the other refineries. It follows that the assessment of those other refineries had no value in determining whether the method used to evaluate the Texaco plant was a reasonable one.

The judgment is affirmed.

Amerian, J., and Tevrizian, J.,* concurred.

A petition for a rehearing was denied October 13, 1982.

*Assigned by the Chairperson of the Judicial Council.